Mr. Justice Bradley
delivered the opinion of the court:
We are clearly of'the opinion that the claimant in this case was not within the intent and meaning of the Act July 28, *66 1866, (14 Stat. L., p. 310, § 18.) The Court of Claims finds, it is true, that he held the position of superintendent of the public garden of the Agricultural Department during the period for which the claim is made, namely, from March 4, 1865, to July 1,1870. But it is well known that the Botanical Garden near the Capitol has been regarded as a public garden for many years, and long before the Experimental Garden of the Agricultural Department was established, and that itwas managed by a superintendent and assistant superintendents. It is equally well known that this garden has for a long period, if not always, been under the immediate [direction and control of the Joint Library Committee of Congress. The public statutes contain a long series of appropriations for both garden and superintendents. Thus, in the appropriation bill of July 2,1864, for the year ending June 30, 1865, (13 Stat. L., 349,) the following appropriation was made:
“ Botanic Garden. — For grading, draining, procuring manure, tools, fuel and repairs, purchasing trees and shrubs, under the direction of the Library Committee of Congress, three thousand three hundred dollars.
“For pay of superintendent of Botanic Garden, and assistants in the Botanic Garden and greenhouses, to be expended under the direction of the Library Committee of Congress, six thousand one hundred and forty-five dollars and eighty cents.”
A similar provision is made in the appropriation bill for the year ending June 30,1866, adding $2,500, to be expended under direction of the Joint Committee of the Library, for erecting four greenhouses, (14 Stat. L., 21.) The like appropriation for salaries was made in the appropriation bill for the year ending June 30,1867, (14 Stat. L., 193.) Then comes the act in question, increasing the salaries 20 per cent., to commence with that Congress, to wit, March 4,1865. The act, as will be shown hereafter, increases the salaries of “ the three superintendents of the public gardens.” Now, in the next appropriation bill, for the year ending June 30, 1868, not only is the ordinary appropriation made for the “Botanic Garden, under direction of Library Committee of Congress, $3,300,” and for pay of superintendent and assistants, and assistants in Botanic Garden and greenhouse, under the direction of the Library Committee of Congress, $6,145.80,” but a continuation of the 20 per cent, is added thus : “ For 20 per centum additional on the pay of the *67 above, $1,229.16.” The designation “ superintendent and assistants” implies at least three in number. No such appropriation is found in reference to the Experimental G-arden attached to the Department of Agriculture. Whilst the Botanic Garden, under the .direction of the Joint Library Committee of Congress, with its superintendent and his assistants, eo nomine, have thus been the subject of appropriations for a long period, the Experimental Garden established by the Department of Agriculture was comparatively recent, and regarded as an appendage of that Department, and the appropriations therefor had been made under the general head of appropriations for the said Department, and no appropriation for any superintendent thereof, eo nomine, had ever been made up to the time of the passage of the Aet July 28,1866. The appropriation had been for the “Experimental Garden” and for the salary of the foreman and laborers. (See 13 Stat. L., 155; 14 id., 202.)
From this legislative history it is apparent that the Botanic Garden near the Capitol was regarded as a public garden; that it had a superintendent and assistant superintendents; that appropriations' had for years been made for their salaries as superintendent and assistants byname; and that they were employed, and the garden'was managed, under the immediate direction of the Joint Library Committee of the two Houses of Congress. They were in fact employés of this committee.
Now, it seems to us that the eighteenth section of the Act July 28, 1866, which provides for the addition of the 20 per cent, now claimed by the appellee, had reference only to persons employed under the direction of the two Houses of. Congress or their committees, and not to those of any of the Executive Departments. The section itself is its own best interpreter. It is as follows, (14 Stat. L., 323:)
“ Sec. 18. And be it further enacted, That there be allowed and paid to the officers, clerks, committee clerks, messengers, and all other employés of the Senate and House of Bepresenta-tives, and to the Globe and official reporters of each House, and the stenographer of the House, and to the Capitol police, and ■ the three superintendents of the public gardens, their clerks and assistants, and to. the librarian, assistant librarians, messengers, and other employés of the Congressional Library, an addition of 20 per cent, on their present pay, to commence with the present Congress; and the amount necessary to pay *68 this allowance is hereby appropriated out of any money in the Treasury not otherwise appropriated.”
In view of the long supervision over the Botanic Garden by the Library Committee, and of the previous legislation referred to, language could hardly be plainer.
But there is additional evidence that this increase of salary was intended to be confined to persons employed under the immediate direction of the two Houses of Congress and their committees, in the fact that by a Joint Resolution February 28, 1867, (14 Stat. L., 569,) 20 per cent, was added to the salaries of all employés of the several Executive Departments, including the Department of Agriculture, for one year from and after the 30th of June, 1866; and the claimant actually received such addition accordingly. It is not reasonable to suppose that Congress intended to single out this particular employé from all the Government employés as alone entitled to a double addition of 20 per cent, to his compensation, which he certainly would receive for the year named, if his construction of the Act July 28, 1866, is the correct one.
The judgment must be reversed.